In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3088

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC E. GARVEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 10-CR-134—**William M. Conley**, *Chief Judge.*

ARGUED JUNE 4, 2012—DECIDED AUGUST 3, 2012

Before KANNE, WOOD, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Beginning in 2007, Eric E. Garvey conspired with four others to transport and sell stolen property along the Minnesota-Wisconsin border. At Garvey's trial, all four co-conspirators testified against him. On appeal, Garvey alleges that the district court's misstatement of its subpoena power prevented him from calling a witness to impeach one of those co-conspirators. Garvey also claims that the district court erred

in denying his motion for a mistrial after the prosecutor's questioning prompted a witness to declare that he smoked marijuana with Garvey. For the following reasons, we affirm Garvey's conviction.

## I. BACKGROUND

From July 2007 to February 2009, Garvey and four co-conspirators engaged in a scheme to steal lawnmowers, tractors, trucks, ATVs, snowmobiles, and trailers along the Minnesota-Wisconsin border and then transport and sell these stolen items to various buyers. Two of Garvey's co-conspirators, Toby Thomas and Jeff Olson, were responsible for stealing the items. On the other end, Chad Wyttenbach and Victor Trejo assisted in storing and selling the stolen property. At various times, Garvey was involved in stealing, transporting, and selling the stolen items. Garvey was charged with one count of conspiring to transport, possess, sell, and dispose of stolen vehicles and goods in interstate commerce, in violation of 18 U.S.C. §§ 2, 371, and eight counts of theft, transportation, or sale of specific stolen vehicles or goods in interstate commerce, in violation of 18 U.S.C. §§ 2312-15.

All four co-conspirators pled guilty and agreed to testify against Garvey at trial, but for purposes of this appeal, we need only discuss the testimony of Wyttenbach and Thomas. Wyttenbach bought stolen John Deere lawnmowers and tractors from Garvey and sold them to four separate buyers. Wyttenbach testified that he gained neither profit nor anything else of value from

these transactions. One of his buyers was Justin Hoopman. Wyttenbach arranged for Hoopman to purchase a small lawn tractor from Garvey for $2,000. Wyttenbach transported the tractor to Hoopman's residence and left Hoopman's payment at an arranged place for Garvey to retrieve.

On cross-examination, Garvey's counsel impeached Wyttenbach by pointing out several glaring inconsistencies between his testimony and statements he gave to police officers during their investigation. Garvey's counsel also questioned Wyttenbach's motive to protect himself and his friends, especially in light of the officers' increasing threats about the potential consequences Wyttenbach faced for his own unlawful acts. Wyttenbach freely admitted that he tried to downplay his role and lied to police officers on more than one occasion.

Garvey's counsel had also planned to call Hoopman as an impeachment witness. According to Garvey, Hoopman would have testified that Wyttenbach requested $5,000 for the small lawn tractor, contrary to Wyttenbach's testimony that he never profited from the scheme.[1] Unfortunately for Garvey, Hoopman had not yet been served with a subpoena on the Friday before Garvey's trial was to begin on Monday. Upon learning of this problem on Friday, the district judge stated that Garvey could not subpoena Hoopman in

---

[1] During cross-examination, Garvey's counsel asked Wyttenbach if he sold the small lawn tractor to Hoopman for profit, but Wyttenbach denied doing so.

any event because Hoopman, who resided in Connecticut, fell outside of the court's one-hundred-mile jurisdiction for subpoenas. On Monday morning, the district judge corrected himself, informing counsel that his subpoena power was nationwide and Garvey was free to attempt to subpoena Hoopman again. Hoopman was eventually served on Wednesday but did not testify and, therefore, could not impeach Wyttenbach's testimony.

Co-conspirator Thomas testified against Garvey on the second day of trial. Prior to trial, the district court granted a motion in limine preventing the government from introducing any evidence of Garvey's drug use or sales. Thomas was specifically admonished not to mention any drug use or transactions. Despite these instructions, Thomas testified:

> Q: In May of 2007, were you associating with Mr. Garvey?
>
> A: Yeah, I believe so.
>
> Q: And what sort of things were you doing with him at that time?
>
> A: Oh, we got together and smoking [sic] weed.

(Trial Tr. at 2-P-91.) Garvey's counsel objected and the district judge instructed the jury, "any reference to any activities of that kind have no place in this matter and the jury should disregard that last reference." *Id.* Garvey's counsel thereafter moved for a mistrial. The court stated:

> I think it was an unfortunate occurrence. I didn't want to dwell on it. If you want a curative instruction

at some point, I will give it. . . . I am very disappointed that the witness blurted that out. I had hoped it was made abundantly clear to him it was not an appropriate discussion, but this is not the time to address it and so I would ask counsel to step back at this time and we can address it at a break.

*Id.* at 2-P-93-94. At the end of the day, the government informed the court that it had instructed Thomas not to mention drugs and his response was unexpected. The district judge noted that everyone was surprised, but he would not "grant a mistrial based on a single statement unrelated to the activities of this trial." *Id.* at 2-P-162. He further explained:

Frankly, given the amount of testimony of far more heinous conduct, I can't imagine that the fact that at some point this witness smoked marijuana with the defendant would have tainted the jury's ability to listen to the evidence and decide it. It defies credibility that that would be the case, but a record has been made.

*Id.* at 2-P-162-63. Although the court offered to give an additional limiting instruction, Garvey's counsel did not request one.

Over the course of the four-day trial, the government called thirty-one witnesses and presented phone records which demonstrated frequent interaction among Garvey, his co-conspirators, and the buyers during the relevant time periods. The jury convicted Garvey on six of the nine counts. Garvey was sentenced to sixty months' imprisonment on the conspiracy count and ninety

months' imprisonment on the remaining counts, to run concurrently with each other. Garvey filed this timely appeal.

## II. ANALYSIS

*A. Hoopman Subpoena*

Garvey first alleges that the district court's misstatement of its subpoena power denied him his Sixth Amendment right to call witnesses on his behalf. Because Garvey did not raise this issue below, we review for plain error. *See United States v. Peugh*, 675 F.3d 736, 740 (7th Cir. 2012). Under this standard, we determine whether there was "(1) an error, (2) that was plain, meaning clear or obvious, (3) that affected the defendant's substantial rights in that he probably would not have been convicted absent the error, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012).

The Sixth Amendment guarantees a defendant the right to present his own witnesses to establish his defense. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Garvey alleges that the district court's initial misstatement of its subpoena power[2] was plain error resulting in the

---

[2] During the Friday conference, the judge stated that his jurisdiction only extends one hundred miles for service of a subpoena. This is the civil subpoena power, as stated in

(continued...)

denial of this right. Had the district court properly stated its subpoena jurisdiction in the Friday conference, Garvey would have had an additional weekend to serve Hoopman and present his testimony at trial.

Garvey acknowledges that Hoopman's testimony would have been presented solely for impeachment purposes. He argues that because the government placed so much reliance on Wyttenbach's testimony to convict Garvey, Hoopman's testimony was crucial because it demonstrated that Wyttenbach lied and played a bigger role than he let on. This, in turn, would have cast doubt on Garvey's role in the conspiracy. But we believe Garvey overstates the value of Hoopman's testimony. Garvey's counsel thoroughly impeached Wyttenbach during trial. Wyttenbach admitted that he lied to police and downplayed his role in the conspiracy to protect himself and his friends. Thus, any impeachment testimony by Hoopman would have been cumulative. Further, we are not convinced that the extent of Wyttenbach's role in the conspiracy necessarily bears on Garvey's own unlawful conduct. The district court on more than one occasion questioned whether Hoopman's testimony was material to Garvey's defense. Accordingly, even if the district court did plainly err in misstating its subpoena power, Garvey cannot establish

---

[2] (...continued)

Federal Rule of Civil Procedure 45(b)(2)(B). In criminal proceedings, however, "[a] subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States." Fed. R. Crim. P. 17(e)(1).

that his substantial rights were affected such that he probably would not have been convicted.

## B.  Drug Use Testimony

Garvey also challenges the district court's denial of his motion for mistrial after Thomas testified that he smoked marijuana with Garvey. Given the highly prejudicial nature of testimony regarding drug activity, the jury's mixed verdict, and the fact that the case was entirely unrelated to drug charges, Garvey believes the motion should have been granted. We review the denial of a mistrial for an abuse of discretion. *United States v. Powell*, 652 F.3d 702, 709 (7th Cir. 2011). A mistrial is appropriate when "an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial." *Id.* (*quoting United States v. Tanner*, 628 F.3d 890, 898 (7th Cir. 2010)).

Garvey's request for a mistrial was based on a singular statement made by Thomas, in which he stated "Oh, we got together and smoking [sic] weed." (Trial Tr. at 2-P-91.) Following this statement, defense counsel immediately objected. The district court sustained the objection, admonished the jurors not to consider Thomas's statement, and offered to provide an additional limiting instruction, which defense counsel declined. "[J]urors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds." *United States v.*

*Smith*, 308 F.3d 726, 739 (7th Cir. 2002). Thomas's isolated statement that he smoked marijuana with Garvey was brief, "unadorned with additional details," and not so "powerfully incriminating" as to prevent the jurors from following the district court's instruction, which was prompt and appropriate. *See id.* Accordingly, Garvey cannot overcome the presumption that jurors obey the instructions given to them. The district court did not abuse its discretion in denying Garvey's motion for mistrial.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.