In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1661

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CRISTOBAL VARGAS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cr-00630-1 —**Matthew F. Kennelly**, *Judge*.

ARGUED APRIL 5, 2012—DECIDED AUGUST 10, 2012

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. A jury convicted Cristobal Vargas of attempting to possess, with an intent to distribute, more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Vargas claimed that he was just buying a truck when he appeared in the parking lot of a local pharmacy with a shoe box stuffed with $45,000 in cash. He claimed that was the reason for his numerous telephone conversations with Estebean Rojo,

the government's confidential source and, why he was in the parking lot, with the money, on the day he was arrested. But the government established at trial that the Drug Enforcement Agency instructed Rojo to get close to Vargas as part of an investigation into "possible cocaine trafficking," Vargas and Rojo's conversations contained countless coded references to cocaine and cocaine trafficking, and Vargas took a "substantial step" in his attempt to possess cocaine by appearing at the pharmacy's parking lot with $45,000 in cash.

Vargas now appeals his conviction, arguing that the district court erred by allowing Rojo to testify that he had been told to get close to Vargas because of "possible cocaine trafficking." We agree with Vargas that the statement should not have been admitted, but the court's error was harmless in light of the overwhelming evidence showing Vargas's guilt beyond a reasonable doubt. Vargas also finds error in the district court's refusal to admit a portion of his videotaped arrest during which he blurted, "I was here buying a truck, man!" He believes the statement should have been admitted under the doctrine of completeness. We disagree. That doctrine is confined by the strictures of the hearsay rule, and Vargas cannot identify a hearsay exception that applies. Finally, Vargas claims that he must be given a new trial because the district court failed to inform the jury that it could not convict him for simply being at the scene of a crime. But the jury charge adequately covered Vargas's defense theory and required the jury to find beyond a reasonable doubt that Vargas

intended to possess cocaine and he knowingly took a substantial step toward that aim. So Vargas's requested "mere presence" instruction was not relevant and the district court did not err by refusing to give it. For these reasons, we affirm Vargas's conviction.

## I. BACKGROUND

At some point in 2008, the Drug Enforcement Agency received information about cocaine being trafficked out of a muffler shop on South Stony Island Avenue in Chicago. Chicago Police Officer Terrance Looney, a task force officer detailed to the DEA, spearheaded an investigation into the shop. Officer Looney identified Cristobal Vargas as a suspect and coordinated the agency's request that Estebean Rojo, a confidential informant, pose as a drug dealer from Mexico to infiltrate the drug ring. The DEA chose Rojo because he is from Mexico, speaks fluent Spanish, owns a large sports utility vehicle with Mexican license plates, and he had been a DEA confidential informant more than thirty times in the last fourteen years.

Before sending Rojo to the muffler shop, Officer Looney and other agents gave him detailed instructions about what to do and why. Agents described the investigation as one into "possible cocaine trafficking," showed Rojo a photograph of Vargas, and told him to drive his SUV to the muffler shop to see if Vargas was willing to purchase cocaine. As part of this plan, Rojo would appear to be engaged in a telephonic drug deal with an individual named "Pepe," who was actually an undercover

officer. Rojo and Pepe would discuss the deal via a two-way, walkie-talkie feature available on Rojo's mobile phone, using "narcotics lingo." The agents wanted Vargas to hear the particulars of this purported drug deal, suspecting that Vargas might respond by trying to purchase drugs from Rojo.

When Rojo arrived at the muffler shop on August 1, 2008, he did as instructed. Using the walkie-talkie feature on his phone, Rojo initiated a telephone conversation with Pepe. Rojo chirped, "How is Laredo?" Pepe responded, "Hot, hot in every way." Rojo then continued, "How are the guys?" This solicited Pepe's reply, "They already jumped over the border." All of this language is code for cocaine trafficking. Apparently overhearing Rojo's and Pepe's conversation, Vargas interjected: "What kind of guys are these?" Rojo answered, "They are good ones." Not done, Vargas proceeded, "What color are the guys? Green or White?" Rojo clarified that the "guys" were white and, after Vargas inquired about price, promised a good deal.

Over the next few days, Vargas and Rojo had almost a dozen phone conversations about the "guys," all of which were recorded. Officer Looney and several DEA agents, meanwhile, continued to move forward with their investigation, conducting surveillance on Vargas to confirm his employment at the muffler shop and providing Rojo with additional instructions on how to engage him in a drug deal. On August 7, 2008, Officer Looney told Rojo to call Vargas and schedule the exchange to occur in the parking lot of a Walgreens

pharmacy located near the muffler shop. Officer Looney directed Rojo to call Vince Ozuna, another undercover officer, when Rojo had confirmed that Vargas brought the money he promised to complete the deal. Rojo's call would serve as the covert "arrest signal."

Vargas arrived at the Walgreens parking lot in a van driven by another individual. Carrying a shoe box containing $45,000 in cash, Vargas left the van and entered the passenger's seat of Rojo's vehicle. This entire exchange was surreptitiously recorded. Rojo and Vargas discussed the deal, and Rojo requested that Vargas "[g]o ahead, count it." Vargas responded, "No—how we gonna count it? . . . How are [we] gonna count it? I don't think we can count all of this here . . . The job is all there. It's counted already." Appeased, Rojo then detailed how the transaction would work: Pepe would pull up beside Rojo's vehicle in a black truck with the doors open so Vargas could "[g]rab the package and take . . . the knapsack." Vargas inquired, "Is it all escamita or what?" Rojo answered, "You're gonna see it. If you don't like it, you give it back to me. I'll stay here with you. And besides that, I'm giving you the other two, so please don't [mess with] me, please." Vargas then called Officer Ozuna and told him that "[e]verything is ready." DEA agents arrived shortly after receiving the signal and arrested Vargas.

While effectuating the arrest, one of the agents had his gun drawn and asked Vargas, "What is that? . . . What is that? There's dope or money in there?" (referring to the shoe box.) Vargas blurted, "There's money." The agent

then asked how much money was in the shoe box, and Vargas exclaimed, "I was here buying a truck, man!" All of this was recorded, but the videotape ended a few seconds later.

A grand jury indicted Vargas on one count of attempting to possess, with the intent to distribute, 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. At trial, the government put Rojo on the stand. Rojo told the jury that the DEA had instructed him to "have a conversation with Mr. Vargas, try to get close to Mr. Vargas because of a possible— because of possible cocaine trafficking and try to go to his auto shop." Defense counsel immediately objected, requested a sidebar, and moved for a mistrial. Counsel argued that the government's question elicited unfairly prejudicial propensity evidence. The government disagreed, pointing out that Rojo "didn't say anything about the defendant's background" and he had been "instructed not to talk about" other drug deals. The court overruled defense counsel's objection and found that the statement was not unfairly prejudicial because it did not reference a "particular transaction." Defense counsel did not request, and the court did not give a limiting instruction to the jury regarding Rojo's statement.

The government also submitted as evidence the recordings and transcripts (translated into English) of ten conversations between Rojo and Vargas. The conversations occurred at various times between August 4, 2008 and August 7, 2008. On the calls, Rojo and Vargas discussed "guys," "pretty white . . . carpets," "tickets,"

"guerejas," and "squares"; Rojo testified that these were code words for cocaine. The two men also talked price. Rojo informed the jury that, at one point on the tapes, when he responded to a question by Vargas regarding "the number" of the "guys" by saying "they could be twenty," he meant that the cost of the cocaine would be $20,000 per kilogram. Special Agent Charles Baumgartner corroborated Rojo's interpretation. He confirmed that Vargas and Rojo used words during their conversations that narcotics dealers frequently use to avoid explicitly talking about the drug being trafficked.

Officer Looney, Special Agent Baumgartner, Investigator James Scannell, and Special Agent Kestutis Jodwalis each described their role in investigating Vargas. They attested to their surveillance of Vargas, their interpretation of his recorded conversations as referencing cocaine and cocaine trafficking, and their knowledge of the average price for a kilogram of cocaine at the time of Vargas's arrest. The government also played an edited version of the surveillance video showing Vargas's arrest. Defense counsel requested in limine, and again during trial, that for the sake of completeness the jury be shown the part of the video during which Vargas shrieked, "I was here buying a truck, man!" The district court denied those requests.

Vargas did not testify in his own defense. But he did present Santiago Vaca, who stated that Vargas sometimes purchased and repaired used vehicles for resale. The cornerstone of Vargas's defense, according to defense counsel, was that he had always intended to buy a truck, not cocaine.

At the close of the evidence, the district court instructed the jury that "the government must prove each of the three following propositions beyond a reasonable doubt":

> Number 1. The defendant intended to possess a controlled substance and intended to transfer it to another person. . . .

> Number 2. The defendant believed that the substance was some kind of controlled substance. . . .

> Number 3. The defendant knowingly took a substantial step toward possessing a controlled substance, intending to possess the controlled substance. A substantial step is an act beyond mere planning or preparation to commit the crime but less than the last act necessary to commit the crime.

To accommodate Vargas's pre-trial request, the court also gave a "mere association" instruction—"The defendant's association with persons involved in a crime scheme is not enough by itself to prove his participation or membership in the crime." But the court rejected Vargas's recommendation to instruct the jury that "[a] defendant's presence at the scene of a crime and knowledge that a crime is being committed is not alone sufficient to establish the defendant's guilt."

The jury convicted Vargas. He moved, post-trial, for judgment of acquittal or, in the alternative, a new trial. He argued that Rojo's statement about "possible cocaine trafficking" should have been excluded, the portion of the video during which he said he was buying a truck should have been admitted, and the jury should have

received his recommended instruction. The district court denied Vargas's motion and entered judgment. Vargas now appeals.

## II. ANALYSIS

On appeal, Vargas identifies three trial errors that he maintains warrant reversal. First, he argues that the district court committed prejudicial error by admitting Rojo's statement regarding "possible cocaine trafficking." Second, he contends that the district court violated the rule of completeness by not admitting the portion of his arrest video where he claimed that he was buying a truck—a statement that he contends is admissible under the excited-utterance or state-of-mind hearsay exceptions. Finally, Vargas insists that the district court erred by not instructing the jury on his "mere presence" theory of the case. The government disagrees with each of Vargas's contentions and argues that even if there was error, it was harmless. We address each issue in turn.

### A. Rojo's Statement Regarding "Possible Cocaine Trafficking" Should Not Have Been Admitted

Vargas's first point of contention is that the district court should have granted his mistrial motion after Rojo testified that DEA agents instructed him to get close to Vargas as part of an investigation into "possible cocaine trafficking." Vargas argues that Rojo's statement constituted unfairly prejudicial propensity evidence that "invited the jury to draw an improper infer-

ence that his mere presence at the muffler shop could be connected with drug trafficking, thus making the government's claim that he intended to buy drugs from Rojo seem more trustworthy and reliable." The government counters that the district court correctly concluded that Rojo's remark did not reference any particular bad act, and the statement was not offered to show propensity. According to the government, the statement simply provided foundation for the jury to understand Rojo and Vargas's subsequent interactions. The government also argues that any error was harmless.

We review a district court's denial of a motion for mistrial for an abuse of discretion. *United States v. Danford*, 435 F.3d 682, 686 (7th Cir. 2006). Our review is "highly deferential," *id.*, because the trial court "is in the best position to determine the seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial." *United States v. Clarke*, 227 F.3d 874, 881 (7th Cir. 2000). We, therefore, "must affirm unless we have a strong conviction that the district court erred," *id.*, and the error committed was not harmless. *See United States v. Mazzone*, 782 F.2d 757, 763 (7th Cir. 1986) ("If the impact seems to have been nil ("harmless"), that is just another way of saying that the trial was not poisoned, due process was not denied, reversible error was not committed."). The ultimate inquiry then is "whether the defendant was deprived of a fair trial." *Clarke*, 227 F.3d at 881.

In the present case, Vargas based his mistrial motion on the district court's allegedly erroneous admission of

propensity evidence. This implicates the district court's ruling on an evidentiary matter, which we also review for an abuse of discretion. *United States v. Rogers*, 587 F.3d 816, 819 (7th Cir. 2009). We will reverse only if the record contains no evidence on which the district court could have rationally based its ruling. *See id.*

The evidentiary dispute in this case results from the way the two sides characterize Rojo's statement. Vargas claims that Rojo's testimony is improper propensity evidence; the government maintains that it is direct evidence of the charged offense. Vargas argues that the government's argument relies on the "inextricably intertwined" doctrine that we overruled in *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) ("Henceforth, resort to inextricable intertwinement is unavailable when determining a theory of admissibility."). Under that now-defunct doctrine, "evidence inextricably intertwined with charged conduct is, by its very terms, not other bad acts and therefore, does not implicate Rule 404(b) at all." *Id.* at 717-18. Examples of what we formerly considered admissible under the doctrine include evidence "necessary to provide the jury with a complete story of the crime on trial"; evidence that if absent "would create a chronological or conceptual void in the narrative of the charged offense"; and evidence that "is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of the charged offense*." United States v. Boone*, 628 F.3d 927, 933 (7th Cir. 2010) (citing cases). This evidence is accurately described as "contextual"—it fills what would otherwise be a void in the

circumstances, chronology, or narrative of the defendant's alleged criminal conduct. *See id.* This is precisely what the government argues Rojo's statement provided the jury: context. According to the government, the statement "established the only obvious point that Rojo was assisting an investigation of possible cocaine trafficking" and it "provided foundation for the jury to understand Rojo's subsequent interactions with [Vargas]."

*Gorman* does not stand for the proposition that "foundation" or "contextual" evidence is always inadmissible. *See United States v. Foster*, 652 F.3d 776, 784 (7th Cir. 2011) (explaining that after *Gorman*, "we instructed district courts to consider whether such evidence would be admissible either under Rule 404(b) or as direct evidence of the charged offense."). As we explained in *Gorman*, "If evidence is not direct evidence of the crime itself, it is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper, at least if not admitted under the constraints of Rule 404(b)." *Gorman*, 613 F.3d at 718. But *Gorman* does offer a prime example of direct, as opposed to propensity, evidence. The defendant there was tried and convicted for making perjurious statements to a grand jury convened to indict his cousin on federal drug trafficking charges. Federal law enforcement officials had sought to confiscate a Bentley that the cousin purchased with ill-gotten gains. The government charged the defendant with directing investigating officers to search a spot in his condominium's parking garage that he knew was unoccupied, intentionally diverting the officers from the place where the Bentley

had actually been parked. A grand juror asked the defendant, "Did you have a Bentley in your garage at Lion's Gate?" The defendant responded "No." The juror continued, "Ever?" And the defendant answered, "No, never." At trial, the government called witnesses to testify that the defendant orchestrated the Bentley's removal from the garage, retrieved money from its trunk, and then ordered that the vehicle be abandoned. The court denied the defendant's motion to suppress this evidence. On appeal, we held that "[b]ecause the basis for the perjury charge was that [the defendant] denied 'having' the car in his garage, his theft of the car and extrication of the money from within were direct evidence of his false testimony." *Id.* at 719. The evidence was "direct" because it established that the defendant "'had' a Bentley in the garage in the first instance." *Id.*

Rojo's statement was not direct evidence of Vargas's charged offense. The indictment alleged that Vargas attempted to possess, with the intent to distribute, more than 500 grams of cocaine "[o]n or about August 7, 2008." The "possible cocaine trafficking" that Rojo described had to have occurred prior to August 1, 2008, when the DEA enlisted Rojo's assistance in the sting. And the government did not charge Vargas for his suspected involvement in those prior transactions. Rojo's testimony about the agents' suspicions did not tend to prove the elements of the offense for which Vargas was actually charged. The evidence, therefore, cannot be properly categorized as direct evidence. But does its admission require reversal? In *Gorman*, we explained

that we will affirm the admission of contextual, non-direct evidence if it comports with Rule 404(b). *Gorman*, 613 F.3d at 719; *see also Foster*, 652 F.3d at 784 ("[W]e think it is clear that the judge would have admitted this evidence under Rule 404(b) if he had anticipated our about-face."); *cf. United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012) ("In this case, however, the evidence of Miller's recent possession of the same gun was directly relevant evidence of the charged crime, not propensity evidence. Because the district court reached the correct result, the court's use of the now disfavored rationale does not matter."). And all evidentiary errors are subject to harmless error review. *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010) ("Evidentiary errors are subject to harmless error analysis under Fed. R. Crim. P. 52(a).").

It is well established that evidence may be properly admitted under Rule 404(b) when:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Boling*, 648 F.3d 474, 479 (7th Cir. 2011); *United States v. Long*, 86 F.3d 81, 83 (7th Cir. 1996); *see also*

Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show . . . the person acted in accordance with the character."). The government argues that Rojo's statement did not attempt to establish Vargas's propensity to traffic cocaine, but we believe that to be a natural and logical inference flowing from the statement. If cocaine had previously been trafficked out of the muffler shop, and Vargas worked at the muffler shop (which he did), the jury might have inferred that Vargas was one of the individuals involved in the trafficking. And Rojo's use of the word "possible" to describe the suspected drug trafficking did not, on its own, inoculate the testimony. *See United States v. Prieto*, 549 F.3d 513, 523 (7th Cir. 2008) (finding error in admission of statements about defendants' "'possible connection'" to other illegal drug activity, but holding the error harmless). Regarding the second and third Rule 404(b) factors, there was scant evidence in the record to prove by a preponderance that the "possible cocaine trafficking" was close enough in time to be relevant, or that Vargas had actually participated in the past trafficking. *See United States v. Burke*, 425 F.3d 400, 410 (7th Cir. 2005) (explaining that the preponderance standard is appropriate for determining the admissibility of prior acts evidence). The government, for example, did not solicit testimony from the individual who initially gave police information about cocaine being sold out of the muffler shop. So Rojo's statement was not admissible under Rule 404(b), and the district court erred by admitting it.

Errors, however, "do not merit reversal when the government proves that they are harmless, that is, that they did not affect the outcome of the trial*." United States v. Ratliff-White*, 493 F.3d 812, 826 (7th Cir. 2007). The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded. *United States v. Loughry*, 660 F.3d 965, 975 (7th Cir. 2011). "An error is harmless if the untainted incriminating evidence is overwhelming." *Id.*

Our review of the evidence presented at trial assures us that the district court's admission of Rojo's statement was harmless error. To convict Vargas, the government had to prove that he "acted with the intent to possess [an illegal substance]," and that he "engaged in conduct which constitutes a substantial step toward commission of the offense*." United States v. Stallworth*, 656 F.3d 721, 728-29 (7th Cir. 2011). The jury heard a staggering amount of evidence on each element. DEA agents arrested Vargas in the Walgreens parking lot during a planned meeting with the agency's confidential source, Rojo. Vargas arrived carrying a shoebox filled with $45,000 in cash. The government played recordings of Rojo and Vargas planning the drug deal, presented testimony of Rojo and DEA agents to decipher the two men's coded conversations, and adduced powerful evidence of Rojo's intent, including his own words. Rojo's testimony that he was instructed to get close to Vargas as part of an investigation into "possible cocaine trafficking" added little, if anything, to the weight of the evidence against Vargas. Had the statement been

properly excluded, the government's case certainly would not have been "significantly less persuasive." Accordingly, we hold that the district court's erroneous admission of Rojo's statement was harmless.

### B.   The District Court Properly Excluded Vargas's Post-Arrest Statement that He Was "Buying a Truck"

Vargas next argues that the district court violated the rule of completeness by not admitting the portion of the arrest video during which he stated that he was "buying a truck." Vargas maintains that the statement was "relevant to the specific elements of the government's proof and explanatory of portions already admitted into evidence." He insists that the statement was also admissible under the excited-utterance or state-of-mind hearsay exceptions. The government responds that neither the rule of completeness nor the hearsay exceptions apply because Vargas's statement revealed a fact that he remembered rather than his present state of mind. We agree with the government.

Under the doctrine of completeness, codified at Federal Rule of Evidence 106, "a complete statement is required to be read or heard when it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (citation and internal quotation marks omitted). The doctrine, however, does not require admission of statements that are "neither explanatory of nor relevant to the admitted

passages." *Id.* (citation and internal quotation marks omitted). Moreover, a party cannot use the doctrine of completeness to circumvent Rule 803's exclusion of hearsay testimony. *Id.* (rejecting defendant's attempt to cross-examine officers about the omitted portions of his post-arrest statement). This presents a serious obstacle for Vargas's claim. He tries to overcome this hurdle by characterizing his statement as an excited utterance or a statement of his then-existing state of mind. Rule 803(2) provides an exception to the hearsay rule permitting the admission of excited utterances, and Rule 803(3) offers the same for a statement of an individual's then-existing state of mind. Fed. R. Evid. 803(2), (3); *see also United States v. Thomas*, 453 F.3d 838, 844 (7th Cir. 2006) (excited utterance); *United States v. Hartmann*, 958 F.2d 774, 783 (7th Cir. 1992) (state of mind). These exceptions, however, are of no help here.

For a statement to be admissible under the excited-utterance exception, the movant must demonstrate that "(1) a startling event occurred; (2) the declarant makes the statement while under the stress of excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999). As the party seeking to admit the statement, Vargas had the burden of establishing each element. *Id.* The district court concluded that he failed to show that the statement related to the startling event—the arrest. Instead, the court found that the statement related to Vargas's arrival at the Walgreens, a "prior" event. On appeal, Vargas repeats his argument that the arrest should qualify as a startling

event, but he fails to identify grounds for reversing the district court's ruling that the statement related to a prior event. Even assuming that the arrest qualifies as a "startling event," we agree with the district court that Vargas's statement did not relate to the arrest. The evidence supports the district court's conclusion, so we affirm its ruling on this issue. *See United States v. Conley*, 291 F.3d 464, 472 (7th Cir. 2002) ("Because of the special deference we give to the trial judge's evidentiary rulings, we will not reverse unless the record contains no evidence on which [the trial judge] rationally could have based [his] decision.").

The defendant's assertion that his statement falls within the state-of-mind exception also fails. Not only is our review of this issue for plain error because Vargas raised it for the first time on appeal, *United States v. Jackson*, 479 F.3d 485, 491 (7th Cir. 2007), but his argument is contradicted by the text of the exception and our settled case law construing it. The exception simply does not apply to "a statement of memory or belief to prove the fact remembered or believed. . . ." Fed. R. Evid. 803(3); *see also United States v. Harvey*, 959 F.2d 1371, 1375-76 (7th Cir. 1992). Vargas stated that he "was here buying a truck." As the verb tense in that phrase indicates, Vargas made the statement to prove a fact remembered. The state of mind exception does not apply.

Because Vargas's statement could not have been admitted under either the excited-utterance or the state-of-mind exception to the hearsay rules, the district court did not err by rejecting Vargas's request that his out of

court statement be admitted under the doctrine of completeness.

### C. The Jury Charge Adequately Accounted for Vargas's Defense Theory

Vargas's final contention is that the district court erred by not instructing the jury on his "mere presence" theory of the case. He claims that the instruction was necessary to prevent the jury from being misled by Rojo's testimony that the DEA had sent him to the muffler shop as part of an investigation into possible cocaine trafficking, as well as to prevent the jury from finding Vargas guilty simply because he was at the scene of a drug deal between Rojo and "Pepe." The government responds that a "mere presence" instruction was not consistent with the evidence because Vargas was not just "standing around while others engaged in criminal activity." It also stresses that Vargas's theory of the case was already part of the charge because the offense requires a finding beyond reasonable doubt that the defendant "intended to possess" cocaine and "knowingly took a substantial step" toward possession.

Where, as here, the defendant objects to a district court's refusal to give a theory of the defense instruction, our review is *de novo*. *United States v. Baker*, 438 F.3d 749, 758 (7th Cir. 2006). "To be entitled to a particular theory of the case instruction, the defendant must show the following: 1) the instruction is a correct statement of the law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge,

and 4) a failure to provide the instruction would deny a fair trial." *United States v. James*, 464 F.3d 699, 707 (7th Cir. 2006).

Our pattern jury instruction for the "mere presence" defense states that "a defendant's presence at the scene of a crime and knowledge that a crime is being committed is not alone sufficient to establish the defendant's guilt." Pattern Criminal Federal Jury Instructions for the Seventh Circuit 5.11 (1998). Vargas sought this instruction in the district court, arguing that he was at the Walgreens to buy a truck, not cocaine. It is firmly established that a defendant requesting this instruction "must identify evidence consistent with a theory of mere presence." *United States v. Glover*, 479 F.3d 511, 519 (7th Cir. 2007). Such evidence would typically support the possibility that the defendant was "standing around while others engaged in criminal activity." *Id.*

Vargas's appeal of this issue is controlled by *James*. In that case, we held that a district court's refusal to give a mere presence instruction does not deny the defendant a fair trial if the jury could not convict him without finding that the defendant had the requisite "knowledge" to complete the crime. *James*, 464 F.3d at 707-08. The defendant there, who had been charged with possessing cocaine, requested a mere presence instruction because he lived with a cocaine dealer, but claimed to have personally sold only marijuana. Affirming the conviction, we explained that the "mere presence" instruction is "designed to inform the jury that guilt should not follow from . . . presence at the scene of a crime. Rather, guilt

may be found only when the defendant knowingly participated in the criminal activity." *Id.* (citation omitted). Because the possession offense James was charged with required the jury to find that the defendant acted "knowingly," the instructions "adequately apprised the jury" of the elements and the defendant's theory of the case. So the district court did not err by refusing to give the mere presence instruction. *Id.*

Vargas was indicted for attempting to possess, with the intent to distribute, 500 grams or more of cocaine. The evidence in the record does not support Vargas's claim that he was merely present at a crime scene. And the jury charge required the government to prove beyond a reasonable doubt that the defendant "intended" to possess and transfer what he believed to be a controlled substance, and that he "knowingly took a substantial step toward" that aim. Critically, the district court instructed the jury that a "substantial step" requires more than "mere planning or preparation." So for the jury to convict Vargas, it had to find beyond a reasonable doubt that he knowingly committed some act beyond mere planning; it could not convict him for simply being present at the scene of someone else's crime. This court presumes that the jury followed the district court's instructions, *United States v. Zahursky*, 580 F.3d 515, 525-26 (7th Cir. 2009), and Vargas has not shown otherwise. We therefore find no error in the district court's denial of Vargas's request for a "mere presence" instruction.

### III.  CONCLUSION

For the above-stated reasons, the defendant's conviction is AFFIRMED.