In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 12-1277 & 12-2865

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD ZITT and JOSHUA WAMPLER,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:09cr35—**Rudy Lozano**, *Judge.*

ARGUED MARCH 5, 2013—DECIDED APRIL 15, 2013

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Ronald Zitt and Joshua Wampler were charged in a multi-count, multi-defendant indictment alleging a heroin conspiracy and substantive counts of distribution. *See* 21 U.S.C. §§ 841(a)(1), 846. Zitt was convicted after a jury trial of conspiring to distribute, and distributing, heroin. Wampler pleaded guilty to conspiring to distribute heroin. Both filed notices of appeal, and we consolidated their cases.

On appeal Zitt challenges the denial of his motion for a mistrial. Because the district court properly exercised its discretion in denying that motion, we affirm the judgment.

Wampler's appointed lawyer has concluded that Wampler's appeal is frivolous and moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Wampler waived his right to appeal as a condition of his plea agreement. We therefore grant counsel's motion to withdraw, dismiss the appeal, and deny Wampler's motion for substitute counsel.

## I.

Zitt went to trial for conspiring to distribute and distributing heroin. In his opening statement, Zitt's lawyer, Adam Tavitas, reminded the jurors of their duty to assess the credibility of the government's witnesses and asserted that many of those witnesses had agreed to testify against Zitt because, in exchange, they would receive lenient sentences for crimes they had committed.

On the second day of trial, the government called James Summers. The prosecutor questioned Summers, an informant, about his prior convictions in 1976 and 2005. On cross-examination, attorney Tavitas returned to that subject. He asked whether the defendant had known that Summers had gone to prison in 2005, and Summers answered, "I was in prison while he's locked up." At a sidebar Tavitas immediately moved for a mistrial. He argued that Summers's answer was improper

because, although evidence of Zitt's convictions would be admissible should he testify, Zitt had not yet decided whether he would take the stand. The jury would assume, Tavitas asserted, that Zitt had a criminal history and be prejudiced by that knowledge.

The prosecutor countered that Summers simply had given an "obvious answer" to Tavitas's question. The prosecutor assured the court that Summers had been cautioned not to "bring up" Zitt's convictions; neither the court nor Tavitas doubted that was true. The prosecutor added that, until then, he was unaware that Zitt and Summers had been "in jail together," which prompted Tavitas to explain that they weren't "together at the same jail," and thus weren't "bunkies or anything like that."

The district court refused to order a mistrial but offered Zitt two lesser remedies: (1) a recess so that Tavitas could investigate whether Zitt and Summers had been incarcerated in the same facility at the same time; and (2) an admonishment to the jury that Summers's answer was irrelevant. Zitt declined those options and the trial resumed.

During the 3-day trial the government called 15 witnesses, including law-enforcement officers, informants, codefendants, and heroin buyers. The jury learned that Zitt had confessed to a federal agent and divulged where he got his heroin, who traveled to retrieve it, and how he distributed it. Two codefendants testified that Zitt had sent them to get heroin in Chicago and deliver it to buyers in Indiana. Several of Zitt's customers

also testified, implicating him in hundreds of heroin sales. And investigators and informants testified about six attempts to buy heroin from Zitt, all documented with audio and video. Three of those controlled buys succeeded, two were foiled after Zitt's confederates discovered the recording devices worn by the informant, and Zitt himself put the kibosh on the sixth controlled buy when the informant declined to sample the heroin as directed.

Zitt did not testify or present other evidence. The jury returned guilty verdicts on all counts. He was sentenced to life imprisonment.

On appeal Zitt argues that the district court abused its discretion, *see United States v. Keskes*, 703 F.3d 1078, 1086 (7th Cir. 2013), by refusing to order a mistrial after Summers had said they were in jail together. The answer Summers gave, Zitt argues, was improper because his convictions were relevant only to impeach his credibility if he testified, which he did not. Evidence of prior crimes is always prejudicial, says Zitt, and in his view the district court's offer to admonish the jury proves that the testimony was so inflammatory that he was denied a fair trial.

Although the government accepts Zitt's characterization of Summers's answer as "improper," we disagree. Examining another party's witness entails risk in deciding what to ask and how to craft questions, *see Holman v. Gilmore*, 126 F.3d 876, 884 (7th Cir. 1997), and after Summers gave an answer that surprised everyone, Zitt decided that his gamble did not pay off. Zitt's

trial lawyer, Tavitas, never explained why he asked that particular question, and Zitt does not offer a reason on appeal. Whatever Tavitas's intent may have been, the government's argument at sidebar is persuasive: A logical answer to the question whether Zitt had known that Summers went to jail in 2005 is yes, because Summers was in prison at the same time as Zitt. Summers gave an answer that was responsive, fair, and entirely proper given the line of questioning Tavitas was pursuing. *See United States v. Powell*, 652 F.3d 702, 709 (7th Cir. 2011); *United States v. Johnson-Dix*, 54 F.3d 1295, 1303-04 (7th Cir. 1995). Tavitas invited the answer Summers gave, and thus the district court did not abuse its discretion by denying Zitt's motion for mistrial. *See id.* at 1304 (concluding that defense counsel invited government agent's answer—that defendant told agent "half-truths"—in response to cross-examination inquiry into defendant's willingness to answer agent's questions, and upholding denial of motion for mistrial); *United States v. Robinson*, 439 F.3d 777, 782 (8th Cir. 2006) (noting that "a witness's truthful response to counsel's own question is not grounds for a mistrial"); *United States v. Vigneau*, 187 F.3d 70, 81-82 (1st Cir. 1999) (concluding that government witness's answer alluding to credibility of other witnesses was arguably "fairly responsive" to defense counsel's question and, because it was "a single brief reference," harmless); *United States v. Wills*, 88 F.3d 704, 712-13 (9th Cir. 1996) (upholding denial of motion for mistrial after defense counsel elicited testimony on cross-examination barred by motion in limine).

Zitt urges us to follow the reasoning in *United States v. Aldrich,* 169 F.3d 526 (8th Cir. 1999), but that case is inapposite. In *Aldrich* the defendant was tried before a jury on charges for possessing a gun and ammunition as a felon and also for possessing an unregistered firearm. 169 F.3d at 527. To prove the counts of possession by a felon, the government introduced evidence of a prior conviction that would have been excluded as irrelevant if the trial was limited to a charge of possessing an unregistered firearm. *Id.* The jury returned guilty verdicts on all counts, but after the parties learned that the defendant had regained his right to possess firearms fifteen years earlier, the district court vacated the counts for possession by a felon but denied a new trial for the third count. *Id.* at 527-28. The Eighth Circuit—focusing on the "[p]rejudicial spillover from evidence used to obtain a *conviction subsequently vacated*"—remanded for a new trial. *Id.* at 528 (emphasis added). There is nothing remarkable about the outcome in *Aldrich*, and the decision has nothing to do with the issue presented here by Zitt.

Even if we assume for the sake of argument that Summers's testimony was improper, the statement was not so prejudicial that Zitt was denied a fair trial, so any arguable error would be harmless. *See United States v. Vargas,* 689 F.3d 867, 873 (7th Cir. 2012). Summers's comment was brief and nondescript and, afterward, Zitt's criminal history was never mentioned again. *See United States v. Prieto,* 549 F.3d 513, 522 (7th Cir. 2008). Thus, there was no danger that, because of this fleeting answer, the jury was prevented from fairly evaluating

the evidence. *See, e.g., United States v. Garvey*, 693 F.3d 722, 726 (7th Cir. 2012) (concluding that one isolated statement about defendant smoking marijuana, though inadmissible, did not warrant mistrial); *Powell,* 652 F.3d at 709 (acknowledging jury's ability to disregard witness's improper testimony on potential length of defendant's sentence). And contrary to Zitt's contention that the district court conceded that Summers's testimony was "highly inflammatory" by offering to admonish the jury that evidence of past crimes is irrelevant, Zitt's decision to decline the court's offer further weighs against finding an abuse of discretion. *See United States v. Brack,* 188 F.3d 748, 759 (7th Cir. 1999); *Bergmann v. McCaughtry,* 65 F.3d 1372, 1377-78 (7th Cir. 1995); *United States v. Ramos,* 932 F.2d 611, 617 (7th Cir. 1991).

Finally, any impact Summers's quick reference to Zitt's past jail time may have had on the jury is outweighed by the overwhelming evidence of guilt. *See Vargas,* 689 F.3d at 875. The government elicited testimony from investigators and informants implicating Zitt in six attempted controlled buys, all of them memorialized by video or audio played for the jury. Four of his customers testified that, over time, they had purchased significant amounts of heroin from him. Moreover, an agent testified that Zitt had confessed after his arrest and offered incriminating details about the conspiracy. Because the government's untainted evidence was so overwhelming, Summers's momentary comment could not have contributed to the conviction and therefore was harmless. *See Chapman v. California,* 386 U.S. 18, 23 (1967); *Vargas,* 689 F.3d at 875-76; *Prieto,* 549 F.3d at 522;

*United States v. Miller,* 276 F.3d 370, 375 (7th Cir. 2002); *United States v. Emerson,* 501 F.3d 804, 813 (7th Cir. 2007); *United States v. Thornton,* 197 F.3d 241, 250 (7th Cir. 1999).

One technique that might prevent such testimony from coming out in open court would be to have the court directly inform or remind the witness about the prohibited testimony before the witness testifies, outside the presence of the jury. The court could also advise the witness that she may request a sidebar or recess if the witness believes that honestly answering a question would require her to give the prohibited testimony. Then if such a question arises, the witness can request a sidebar or recess, the issue can be fully discussed outside the jury's presence, and a preemptive solution, such as a reformulated question, might be worked out.

## II.

Wampler pleaded guilty to conspiring to distribute heroin. But after reviewing a presentence report incorrectly labeling him as a career offender, he moved to withdraw his guilty plea. The district court denied this motion and imposed a below-guidelines prison sentence of 151 months.

Wampler filed a notice of appeal, but his appointed lawyer has concluded that the appeal is frivolous and moves to withdraw under *Anders v. California,* 386 U.S. 738 (1967). Wampler has responded to counsel's motion, *see* Cir. R. 51(b), and we limit our review to counsel's facially adequate brief and Wampler's response,

*see United States v. Schuh,* 289 F.3d 968, 973-74 (7th Cir. 2002).

Wampler's appointed counsel fails to note in his *Anders* submission that Wampler waived his right to appeal. Unless there is reason to question the validity of Wampler's appeal waiver, that waiver is dispositive here. An appeal waiver stands or falls with the underlying guilty plea, *United States v. Kilcrease,* 665 F.3d 924, 929 (7th Cir. 2012); *United States v. Henry,* 702 F.3d 377, 380 (7th Cir. 2012); *United States v. Sakellarion,* 649 F.3d 634, 638-39 (7th Cir. 2011), but counsel does not say if he asked Wampler whether he wants to challenge his guilty plea, *see United States v. Konczak,* 683 F.3d 348, 349 (7th Cir. 2012); *United States v. Knox,* 287 F.3d 667, 670-71 (7th Cir. 2002). Although the defendant's Rule 51(b) response is ambiguous, it appears that he wishes to challenge his guilty plea, though any challenge would be frivolous.

During the plea colloquy the district court substantially complied with Federal Rule of Criminal Procedure 11. *See Konczak,* 683 F.3d at 349; *United States v. Blalock,* 321 F.3d 686, 688-89 (7th Cir. 2003); *United States v. Akinsola,* 105 F.3d 331, 334 (7th Cir. 1997). The judge explained the nature of the charge, the statutory penalties, the role of the sentencing guidelines and the judge's discretion in applying them, the process for receiving credit for acceptance of responsibility and cooperation with the government, and the trial and appellate rights he was waiving by entering the plea. And the judge ensured that the plea was made

voluntarily with neither the government nor counsel forcing him to plead guilty or assuring a specific sentence. Thus, the transcript of the plea colloquy demonstrates that Wampler knowingly and voluntarily pleaded guilty, and that means that his waiver is enforceable.

Wampler asserts in his Rule 51(b) response that he would argue on appeal that he received ineffective assistance of counsel during plea negotiations (though he does not say how counsel purportedly was deficient). His appeal waiver does contain an exception for ineffective assistance of counsel, but only if it relates directly to the waiver. And even if Wampler limits his argument, his claim is better suited for a collateral proceeding. *See United States v. Jones,* 696 F.3d 695, 702 (7th Cir. 2012); *United States v. Harris,* 394 F.3d 543, 557-58 (7th Cir. 2005).

### III.

Zitt's conviction is AFFIRMED. The motion to withdraw filed by counsel for Wampler is GRANTED, and Wampler's appeal is DISMISSED. Wampler's pro se motion for substitute counsel is DENIED.