NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 12, 2014
Decided January 6, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-2562

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 13-CR-30249-MJR |
| | |
| KENNETH M. LOVING, | Michael J. Reagan, |
| *Defendant-Appellant*. | *Chief Judge*. |

**O R D E R**

Kenneth Loving falsely claimed to be unemployed and, over the course of
16 months, received roughly $25,000 in unemployment insurance benefits from the
Illinois Department of Employment Security. Federal prosecutors charged him with one
count each of mail fraud, 18 U.S.C. § 1341, and theft of funds belonging to the
United States, *id.* § 641. Loving pleaded guilty to the § 641 charge. As provided in his
written plea agreement, he waived the right to appeal his conviction and sentence except
on narrow grounds not relevant here. The district court calculated a guidelines
imprisonment range of 10 to 16 months and sentenced Loving to 10 months.

Loving filed a notice of appeal, but his appointed attorney, who also represented
him in the district court, asserts that the appeal is frivolous and moves to withdraw

under *Anders v. California*, 386 U.S. 738 (1967). We invited Loving to comment on counsel's motion, but he hasn't done so. *See* CIR. R. 51(b). Counsel's submission explains the nature of the case and adequately addresses the points that an appeal of this kind might be expected to involve. We thus limit our review to the subjects that the lawyer discusses. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

In his *Anders* brief, counsel represents that Loving has no interest in challenging his guilty plea, and thus the lawyer refrains from discussing the adequacy of the plea colloquy, *see* FED. R. CRIM. P. 11(b), or the voluntariness of the plea. We accept counsel's representation, *see United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012); *United States v. Knox*, 287 F.3d 667, 670–71 (7th Cir. 2002), despite the unusual lack of detail in the government's factual basis for the § 641 count.

That charge alleges that Loving stole federal funds, not from a federal agency, but from the Illinois Department of Employment Security, which runs the Illinois Unemployment Insurance Program in coordination with the federal government. An essential element of § 641 is that the stolen property belong to the United States. *See* 18 U.S.C. § 641; *United States v. Garcia-Pastrana*, 584 F.3d 351, 369–70 (1st Cir. 2009); *United States v. Barnes*, 761 F.2d 1026, 1033 (5th Cir. 1985). Most funds disbursed to claimants through the unemployment insurance program come from *employers*, not federal taxpayers. *See* 820 ILCS 405/1500, 405/2100(A); *Paschal v. Jackson*, 936 F.2d 940, 942 (7th Cir. 1991). Although the federal government does help defray the program's administrative costs, *see* 42 U.S.C. § 1101; 820 ILCS 405/2100, 405/2103, funds contributed to state or local agencies retain their character as federal property under § 641 only if the federal government continues to exercise sufficient supervision and control over those funds. *See United States v. Wheadon*, 794 F.2d 1277, 1283–85 (7th Cir. 1986); *United States v. Mitchell*, 625 F.2d 158, 161 (7th Cir. 1980); *United States v. Sussman*, 709 F.3d 155, 167 (3d Cir. 2013); *Garcia-Pastrana*, 584 F.3d at 369. It is debatable whether that qualification can be met for purposes of § 641 if federal money is used indirectly in administering a state program. *Compare United States v. Holmes,* 111 F.3d 463, 464–66 (6th Cir. 1997) (concluding that claimant who lies to obtain unemployment benefits from state agency that receives federal money for administrative costs cannot be prosecuted under 18 U.S.C. § 1001 unless benefits themselves are traceable to federal funds), *and United States v. Facchini*, 874 F.2d 638 (9th Cir. 1989) (en banc) (same), *with United States v. Herring*, 916 F.2d 1543, 1546–47 (11th Cir. 1990) (rejecting *Facchini* and concluding that lying to state unemployment insurance agency violates § 1001 even if federal contributions to state agency are used solely for administrative costs). Even so, the federal government also

kicks in money to supplement employer contributions during times of high unemployment. *See* 42 U.S.C. § 1321; 820 ILCS 405/2100(C). Additionally, the federal government funds a portion of extended benefits when Congress appropriates money to augment regular benefits that end after 26 weeks. *See* 26 U.S.C. § 3304(a)(11); Federal-State Extended Unemployment Compensation Act of 1970, Pub. L. No. 91-373, 84 Stat. 695, § 204(a)(1) (*reprinted in* statutory and historical notes to § 3304); American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115, § 2005(a).

The record before us does not illuminate the government's theory that Loving stole *from the United States* by fraudulently obtaining unemployment insurance benefits from the Illinois Department of Employment Security. Nonetheless, a guilty plea admits all essential elements of the charged crime. *See United States v. Kilcrease*, 665 F.3d 924, 929 (7th Cir. 2012); *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). Loving acknowledged in the plea agreement and again during the plea colloquy that federal ownership is an element of § 641, and with that understanding he still signed a "Stipulation of Facts" agreeing that the money he received "belonged to the United States of America and was administered by the Illinois Department of Employment Security." That factual assertion, although conclusory, is at least plausible; Loving could have received federal money because his thefts occurred during periods of "high unemployment," *see* U.S. DEP'T OF LABOR, EMP'T & TRAINING ADMIN., *Emergency Unemployment Compensation 2008 (EUC08) and Federal-State Extended Benefit (EB) Summary data for State Programs*, http://www.workforcesecurity.doleta.gov/unemploy/euc.asp (last visited Dec. 29, 2014) (follow "Data from July 2008 – Present, spreadsheet format" hyperlink under EB Monthly Program Activity) (showing claims in Illinois for extended benefits, which are available only during periods of high unemployment), or if he was receiving extended benefits. So Loving's situation is unlike cases where a defendant's factual admissions made in the course of pleading guilty do not, as a matter of law, constitute the charged crime. *See, e.g., Stanback v. United States*, 113 F.3d 651, 653–54, 656–57, 659 (7th Cir. 1997) (vacating guilty plea to "using" and "carrying" firearm in violation of 18 U.S.C. § 924(c), since parties and district court all had thought incorrectly that defendant's constructive possession of gun found on coffee table where he was packaging drugs constituted "use" or "carrying" of weapon); *United States v. Abdul*, 75 F.3d 327, 329–30 (7th Cir. 1996) (vacating guilty plea to "using" firearm in violation of § 924(c) because record established only that gun was found in defendant's bedroom during execution of search warrant). Under the circumstances, then, we do not have reason to look beyond counsel's assurance that he discussed with Loving the issues relevant to the § 641 charge.

It follows, says counsel, that an appeal would be frivolous given Loving's broad appeal waiver. We agree with that assessment. An appeal waiver stands or falls with the guilty plea, *see United States v. Zitt*, 714 F.3d 511, 515 (7th Cir. 2013); *United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir. 2011), and since Loving does not seek to have his guilty plea vacated, we must enforce his waiver.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.