**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2114

_____

UNITED STATES OF AMERICA

v.

RASHEEM LANGLEY, a/k/a Q,
Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cr-01025-001)
District Judge: Honorable John M. Vazquez

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 12, 2022

Before: KRAUSE, BIBAS, and RENDELL, Circuit Judges

(Filed: November 7, 2022)

---

## OPINION OF THE COURT

---

Olubukola O. Adetula, Esq.
20 Rosewood Lane
Denville, NJ 07834
*Attorney for Appellant*

Rasheem Langley
Ray Brook FCI
P.O. Box 900
Ray Brook, NY 12977
*Pro se*

Mark E. Coyne, Esq.
Jane M. Dattilo, Esq.
Steven G. Sanders, Esq.
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
*Attorneys for Appellee*

KRAUSE, *Circuit Judge*.

When counsel for a criminal defendant seeks to withdraw from representing her client, she must comply with the Supreme Court's edict in *Anders v. California*, 386 U.S. 738 (1967) and file what is known as an *Anders* brief. But counsel filing an *Anders* brief confronts a paradox. On the one

hand, to discharge her obligations under *Anders*, precedent and our Local Rules require counsel to identify all issues that might "arguably support" the defendant's appeal—only to explain why those issues are frivolous. *Id*. On the other hand, we have advised that counsel need not raise every frivolous issue. That paradox is even more confounding where a defendant subsequently files a *pro se* brief raising frivolous issues that counsel did not address. What, if anything, should counsel do in that circumstance? Does her failure either to anticipate the defendant's arguments or to file a supplemental *Anders* brief addressing them mean that counsel's brief is *per se* inadequate? We have not been consistent in answering these questions, so we write today to clarify counsel's obligations.

The vehicle that brings those issues before us is the appeal filed by Richard Langley. Langley's court-appointed counsel sought to withdraw from representing Langley, filing an *Anders* motion and accompanying brief that, on its face, met the standard for a "conscientious investigation . . . [of] possible grounds [for] appeal." *Id*. at 741-42. After being served a copy of that brief, however, Langley filed his own *pro se* brief raising three arguments that were not addressed by counsel but were patently frivolous. Because we hold that counsel is not required to anticipate or address the defendant's arguments in that circumstance, and we agree with Langley's counsel that

3

there are no non-frivolous issues for Langley to raise on appeal, we will grant counsel's *Anders* motion and dismiss the appeal.

## I.   BACKGROUND[1]

In or around 2009, a group of individuals operating under the names "CKarter Boys" or the "Jonez Boys" began a drug trafficking operation ("DTO") in Newark, New Jersey. Defendant Richard Langley was a minor player in this DTO and served as a street-level dealer between 2017 and 2019. And after an investigation consisting of audio and visual surveillance and controlled purchases, Langley was arrested along with 25 other individuals in connection with the DTO on June 18, 2019.

The Government offered Langley a plea agreement in January 2020. The terms of that agreement provided that Langley would plead guilty to a single count of conspiring with others to distribute and possess with the intent to distribute 28 grams or more of crack-cocaine in violation of 21 U.S.C. § 846—an offense carrying a mandatory minimum sentence of 5-years' imprisonment. It also provided that he would not argue for a sentence below five years' imprisonment, and that he would enter into a limited appellate waiver applicable to any challenges to the "sentence imposed by the sentencing court if that sentence is 5 years or below." App at 74. In exchange for his plea, the Government agreed to not file additional charges

---

[1] The factual and procedural background of this appeal are taken from the Government's criminal complaint, Langley's presentence report, Langley's plea agreement, Langley's information, and the transcripts of Langley's plea hearing and sentencing hearing before the District Court.

against Langley for his involvement in the DTO and waived its own right to appeal if the sentence imposed was "5 years or above." *Id*.

Although Langley and the Government acknowledged the sentencing decision was entirely within the discretion of the District Court and "recognize[d] that the stipulations," including the stipulated 5-year sentence, were "not binding upon the Court," both parties "nevertheless agree[d] to the stipulations" and that a term of five-years' imprisonment, *i.e.*, 60-months', would be "reasonable."  App. at 74.

Langley accepted this plea deal and pleaded guilty in November 2020.  During his plea hearing, the District Court engaged in a thorough colloquy under Fed. R. Crim. P. 11.  The Court confirmed that Langley wished to proceed by video conference, that he was not intoxicated, and that he was knowingly and voluntarily pleading guilty. *See* Fed. R. Crim. P. 11(b)(2).  It also confirmed that Langley understood he had the right to plead not guilty and have a trial by jury, and that if he chose to go to trial, he would have the right to an attorney, the right to be present at trial, the right to subpoena witnesses, the right not to testify, and that by pleading guilty he would waive these rights.  *Id*. 11(b)(1)(B)-(F).

Before Langley allocuted to an adequate factual basis for his plea, the Court advised him of the penalties he faced for his offense, and explained that, though non-binding, the Court would have to calculate a sentence range using the United States Sentencing Guidelines.  *Id*. 11(b)(1)(G)-(O), 11(b)(3). And importantly, for our purposes, the Court ensured that Langley had discussed his plea agreement with his counsel and that he understood its terms—including the terms and effect of

5

the appellate waiver. *Id*. 11(b)(1)(N). After affirming that he understood each point addressed by the District Court, Langley entered his plea.

A few months later, in May 2021, the District Court held Langley's sentencing hearing. There, the District Court heard arguments from both the Government and defense counsel that a 60-month sentence was appropriate given Langley's minor role in the DTO and the age of his prior convictions. Although not required, it also addressed *pro se* arguments raised by Langley, who had submitted a letter to the Court requesting a sentence reduction based on the COVID-19 pandemic, the effect of the crack/powder cocaine disparity on the Court's Guidelines calculation, and the age of the criminal convictions used to calculate his Criminal History Category. The Court advised Langley that his prior convictions had to be counted because the last day of incarceration for each of these offenses fell within the 15-year window for counting of offenses under the Sentencing Guidelines. It also explained to him that it had considered his arguments, but because it intended to grant a substantial downward variance and impose the mandatory minimum, in any event, those arguments could not reduce his sentence any further.

Based on a Criminal History Category of VI and an offense level of 25, the Court determined that the applicable guideline range was 110 to 137 months. Nonetheless, after considering arguments of counsel and the factors specified in 18 U.S.C. § 3553(a), the Court granted the downward variance agreed upon by Langley and the Government and sentenced Langley to 60-months' imprisonment, followed by 5 years of supervised release, and a $100.00 special assessment.

Langley filed a timely notice of appeal and requested appointment of appellate counsel, which we granted, appointing Langley's trial counsel to serve on appeal. In due course, the Clerk of Court issued a briefing schedule. When the time came, however, in lieu of filing an appellate brief, Langley's counsel moved to withdraw, asserting in his *Anders* brief, as required under Local Appellate Rule (L.A.R.) 109.2(a), that he identified "no issue of even arguable merit." Upon receipt of that motion, the Clerk issued a notice to Langley. L.A.R. 109.2(a). Shortly thereafter, Langley submitted his own *pro se* brief, objecting to withdrawal of counsel and arguing for a further sentencing reduction on the same grounds he had urged in the District Court.

## I. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over Langley's appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Having received an *Anders* motion, this Court must evaluate the adequacy of counsel's briefing and "must then itself conduct a full examination of all the proceedings to decide whether the case is wholly frivolous." *Penson v. Ohio*, 488 U.S. 75, 80 (1988) (internal citation omitted). If there are no non-frivolous issues for appeal, we will grant counsel's motion to withdraw and will dismiss the appeal.[2] In conducting this analysis, we "exercise

---

[2] Local Appellate Rule 109.2(a) states that if this Court "agrees that the appeal is without merit, it will grant counsel's *Anders* motion, and dispose of the appeal without appointing new counsel," L.A.R. 109.2(a), but our cases have varied between "dispos[ing] of the appeal" by way of dismissal, on the one hand, and affirmance, on the other. *Compare United States v. Coleman*, 575 F.3d 316, 322 (3d Cir. 2009) (disposing of wholly frivolous appeal by affirming the district court), *with*

plenary review to determine whether there are any such [non-frivolous] issues" and review factual findings for clear error. *Simon v. Gov't of Virgin Islands*, 679 F.3d 109, 114 (3d Cir. 2012).

## II. DISCUSSION

When counsel files an *Anders* brief seeking to withdraw from representation, we ask two principal questions: (1) whether counsel's brief in support of her motion fulfills the

*United States v. Moore*, 801 F. App'x 837, 841 (3d Cir. 2020) (disposing of wholly frivolous appeal by dismissing appeal). Other Circuits have also varied in their approach. *See, e.g.*, *United States v. Seignious*, 757 F.3d 155, 166 (4th Cir. 2014) (affirming); *United States v. Pesina-Rodriguez*, 825 F.3d 787, 788 (5th Cir. 2016) (dismissing appeal); *United States v. Zitt*, 714 F.3d 511, 515 (7th Cir. 2013) (affirming conviction and dismissing appeal); *United States v. Edwards*, 400 F.3d 591, 592 (8th Cir. 2005) (affirming); *United States v. Bennett*, 219 F.3d 1117, 1126 (9th Cir. 2000) (affirming).

*Anders* itself provides that if a court finds a defendant's appeal is wholly frivolous, "it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires." *Anders*, 386 U.S. at 744; *see also Smith v. Robbins*, 528 U.S. 259, 278 (2000) ("[A]n indigent defendant who has his appeal dismissed because it is frivolous has not been deprived of a 'fair opportunity' to bring his appeal.") (internal citation omitted); *cf.* 28 U.S.C. § 1915(e)(2)(B)(i) (instructing courts to dismiss "frivolous or malicious" appeals). We will therefore dismiss this appeal, rather than affirm.

requirements of L.A.R. 109.2(a); and (2) whether an independent review of the record presents any non-frivolous issues. *See United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001). Counsel fails to fulfill her obligation under the first prong of the *Anders* inquiry where she either does not adequately attempt "to uncover the best arguments for . . . her client," or she "argue[s] the purportedly frivolous issues [she identifies] aggressively without explaining the faults in the arguments." *Id*. (quoting *United States v. Marvin*, 211 F.3d 778, 781 (3d Cir. 2000)). Conversely, counsel satisfies her *Anders* obligation if she: (1) demonstrates to this Court that she has thoroughly examined the record in search of appealable issues, and (2) explains why those issues are frivolous. *Id*. Once we determine whether counsel has met her *Anders* obligation, we proceed to step two of the *Anders* inquiry.

Although at step two we conduct our own review of the record regardless, it matters whether we found counsel's review adequate at the first step. It matters to the scope of step two because if counsel has fulfilled her obligation under *Anders*, then we may limit our review of the record to the issues counsel raised. *Id*. at 301. It matters for clients because an inadequate brief impairs their ability to respond by "failing to provide them with complete information about the basis for counsel's motion to withdraw." *United States v. Whitely*, 503 F.3d 74, 77 (2d. Cir. 2007). And it matters for counsel for the claims against counsel that may flow from an adverse finding in collateral proceedings and for the reputation of counsel generally. Yet what is required to meet the standard of an adequate review by counsel has not always been described in our case law with clarity or consistency.

We endeavor to shed light on that standard today. Below, we address, first, the obligation of counsel under

9

*Anders* and our Local Rules; second, whether Langley's counsel has met that obligation here; and finally, whether our independent review of the record discloses any non-frivolous issues for appeal.

### A.  The Obligation of Counsel Under *Anders* and L.A.R. 109.2(a)

In *Anders*, the Supreme Court clarified what counsel must do in order to withdraw from representing a criminal defendant while still satisfying "[t]he constitutional requirement of substantial equality and fair process." *Anders*, 386 U.S. at 744. There, the defendant was convicted of a felony drug offense and sought to appeal with the assistance of his appointed counsel. *Id*. at 739. After studying the record, court-appointed counsel concluded there was no merit to his client's appeal and so sent a letter to the California District Court of Appeal seeking to withdraw and explaining:

> I will not file a brief on appeal as I am of the opinion that there is no merit to the appeal. I have visited and communicated with Mr. Anders and have explained my views and opinions to him. He wishes to file a brief in this matter on his own behalf.

*Id*. at 740, 742.

Extrapolating on its holding in *Ellis v. United States*, 356 U.S. 674 (1958), the Supreme Court in *Anders* held that for counsel to withdraw from representation while still comporting with the constitutional requirement that an indigent defendant be provided representation, counsel must satisfy the court that she has conducted a "conscientious investigation"

10

and "has diligently investigated the possible grounds of appeal." *Anders*, 386 U.S. at 741-42. This standard, the Court concluded, was not satisfied by the cursory letter submitted by court-appointed counsel in *Anders*. *Id*. at 743-44. Rather, to demonstrate a "conscientious examination" of the record, it required that counsel provide "a brief referring to anything in the record that might arguably support the appeal." *Id*. at 744.

Since *Anders*, the Supreme Court has provided additional guidance of what is expected of counsel to demonstrate a "conscientious examination" of the record. In *McCoy v. Ct. of Appeals of Wisc., Dist. 1*, for example, the Supreme Court noted that counsel's obligation under *Anders* is to provide "a thorough review of the record and a discussion of the strongest arguments revealed by that review." 486 U.S. 429, 444 (1988). Likewise, in *Penson v. Ohio*, the Court emphasized that counsel's *Anders* brief "serves the valuable purpose of assisting the court in determining both that counsel in fact conducted the required detailed review of the case and that the appeal is indeed so frivolous that it may be decided without an adversary presentation." 488 U.S. at 81-82.

We have addressed the expectations of counsel when seeking to withdraw under *Anders* primarily in three cases: *United States v. Marvin*, 211 F.3d 778 (3d Cir. 2000), *Youla*, 241 F.3d at 296, and *Coleman*, 575 F.3d at 316. That precedent echoes the holdings of the Supreme Court in *Anders*, *McCoy*, and *Penson* that to withdraw from representing an indigent defendant while complying with the Constitution, counsel must submit a brief evincing a "conscientious examination" of the record. *See Marvin*, 211 F.3d at 779-80; *Youla*, 241 F.3d at 299-300; *Coleman*, 575 F.3d at 319. But recognizing that

11

the "conscientious examination" standard is less than pellucid,[3] we attempted in these cases to bound the scope of the search expected of counsel. Specifically, while we reiterated that counsel must satisfy this Court that she has "scoured the record in search of appealable issues" and "attempted to uncover the best arguments" for her client, we also provided the assurance and qualification that counsel need not raise every possible appealable issue to meet this standard. *Marvin*, 211 F.3d at 780; *Youla*, 241 F.3d at 300; *Coleman*, 575 F.3d at 319.

Yet these exact same cases could be read to fault counsel for failing to anticipate and address every issue subsequently raised in her client's *pro se* brief, regardless of whether it was frivolous.[4] *See, e.g.*, *Marvin*, 211 F.3d at 781 ("As an initial matter, [counsel] does not mention all the issues

---

[3] The Supreme Court itself has acknowledged that *Anders*'s standard is subject to criticism. In *Smith v. Robbins*, the Court explained that this standard is "incoherent and thus impossible to follow" because it requires counsel to submit a brief setting forth "arguable issues" in order to convince the court that the appeal is "wholly frivolous," even though the *Anders* Court had described an issue that was "arguable" as "therefore not frivolous." *Smith*, 528 U.S. at 282 (quoting *Anders*, 386 U.S. at 744). But the Court declined to offer a resolution by explaining that the Constitution neither resolved the issue nor required the Court to do so. *Id*. at 284.

[4] Occasionally, we may receive a defendant's *pro se* submission before or contemporaneously with his counsel's *Anders* motion. As discussed in more detail below, however, the defendant's *pro se* brief is typically filed only after counsel has filed her *Anders* motion and brief and served them on the defendant.

12

raised by his client and assure us that he has considered them and found them patently without merit."); *Youla*, 241 F.3d at 301 ("While the length of a brief does not necessarily determine the merit of its arguments, we do not believe that Youla's counsel mentions all the issues raised by his client . . . .") (internal citation omitted); *Coleman*, 575 F.3d at 319 ("First, Coleman's counsel does not mention the argument raised by Coleman in his *pro se* brief to assure us that he has found it to lack merit.").

These seemingly incongruous positions have generated confusion and have led panels of this Court to suggest in precedential and nonprecedential opinions alike that failing to anticipate and discuss each issue raised—even those entirely frivolous—in a defendant's *pro se* brief automatically renders counsel's *Anders* brief inadequate, or alternatively requires counsel to file supplemental briefing addressing those arguments. *See, e.g.*, *Marvin*, 211 F.3d at 781; *Coleman*, 575 F.3d at 319; *United States v. Parson*, 663 F. App'x 184, 187 (3d Cir. 2016); *United States v. Low*, 525 F. App'x 106, 108-09 (3d Cir. 2013); *United States v. Fluker*, 553 F. App'x 210, 212 (3d Cir. 2014). But the best reading of *Marvin*, *Youla*, and *Coleman* repudiates any *per se* rule and supports the conclusion that failure to address *pro* se issues will sometimes, but not always, indicate inadequacy.

We begin with *Marvin*, where, as here, counsel filed an *Anders* brief, and the defendant then submitted his own *pro se* brief raising a host of new issues not raised by counsel. *Marvin*, 211 F.3d at 781. It is true that we criticized counsel for failing to "mention all the issues raised by his client," *id*, but the fundamental reason we held counsel's *Anders* brief deficient was its failure to adequately address *any* appealable issue. *Id*.

13

For example, despite listing five potential issues for appeal at the outset of his *Anders* brief, Marvin's counsel only discussed "a few of them in the body of the brief." *Id*. And even in these discussions, counsel failed to explain why the arguments were frivolous; instead, to the extent he offered explanations, they were incorrect and unsupported by law. *Id*. at 781-82. In this context, the error we attributed to counsel for failing to anticipate and address each of Marvin's *pro se* arguments was essentially illustrative of the overarching deficiency in counsel's brief.

The same holds true for *Youla*. There, counsel submitted a cursory *Anders* brief containing only two pages of analysis of the potential appealable issues. *Youla*, 241 F.3d at 300-01. He did not cite any case law, and failed to mention, let alone discuss, any of the clear discrepancies between the District Court's Sentencing Guidelines calculation and what was recommended in the defendant's presentence investigation report. *Id*. at 300-01. In contrast, the defendant submitted a 26-page *pro se* brief, raising three issues for appeal, two of which involved arguable errors in the District Court's application of the Sentencing Guidelines. *Id*. We observed that, "[w]hile the length of a brief does not necessarily determine the merit of its arguments," *id*. at 301, counsel's failure to address any of the specific issues raised in his client's *pro se* brief led us to doubt the adequacy of his *Anders* brief. *Id*. Our determination, however, was based on counsel's overall failure to submit a brief with sufficient indicia that counsel had "thoroughly searched the record … in service of his client so that we might confidently consider only those objections raised." *Id*. (internal citation omitted).

14

*Coleman* is no different. There, counsel submitted an *Anders* brief that addressed only one potential appealable issue. *Coleman*, 575 F.3d at 319. And, despite the fact that this Court had previously remanded Coleman's case for resentencing due to intervening Supreme Court precedent, counsel's *Anders* brief failed "to fully address the very issue for which [this Court had] remanded . . . ." *Id.* Thus, while we ascribed error to counsel's failure "to address legal challenges raised by [his client]," it was the brief's patent inadequacy that formed the basis of this Court's deficiency determination. *Id*. at 319-20.

Taken together these cases teach that counsel's silence concerning issues raised in a client's *pro se* brief may be relevant to the court's adequacy determination, for example, to illustrate counsel's more general failure to identify or discuss potentially appealable issues, or to highlight her failure to raise non-frivolous issues that were raised *pro se*. But counsel's omission of frivolous issues raised by the defendant has little, if any, relevance where counsel's brief, on its own terms, reflects a conscientious examination of the record and adequately discusses the potentially appealable issues. In that circumstance, rejecting counsel's *Anders* brief as inadequate because of a *per se* rule would waste the resources and time of both counsel and the Court.

The absurdity of a *per se* rule is even more apparent when considering the context in which counsel files an *Anders* brief. Like all appeals, an appeal where counsel for a criminal defendant files an *Anders* brief begins with the production of all relevant transcripts and counsel's review of the entire record. After her review, counsel typically consults, or attempts to consult, with her client about potentially appealable issues, as required by professional norms and ethics rules. *See,*

15

*e.g.*, Pa. R. Pro. Conduct 1.4(a)(2) ("A lawyer shall . . . reasonably consult with the client about the means by which the client's objectives are to be accomplished."). If counsel concludes that there are no non-frivolous issues to raise on appeal, then under L.A.R. 109.2(a) counsel files an *Anders* brief and motion to withdraw, with service on both the defendant and the Government. Only after counsel files and serves her *Anders* brief and corresponding motion does the defendant have the opportunity to file a *pro se* response brief. L.A.R. 109.2(a). At that point, having received counsel's *Anders* brief and any *pro se* brief filed by the defendant, the Government files a brief responding to the *Anders* brief and any *pro se* brief. *Id*.

With that typical *Anders* procedure in mind, it takes no feat of imagination to envision the mischief a *per se* rule would cause. A defendant might not discuss every issue he is contemplating when consulting with counsel or might refuse to meet with counsel altogether. But because counsel typically files her *Anders* brief *before* the defendant's *pro se* brief, a *per se* rule would effectively punish such counsel for not being clairvoyant. That is not a skill we require of defense counsel generally, let alone court-appointed counsel, who, as here, have heeded the Court's call to public service and devoted their time and effort to the representation of indigent defendants.

A defendant might communicate an issue to counsel that is not fairly characterized as potentially appealable, and that counsel therefore opts against including in her *Anders* brief. Yet under a *per se* regime, all a criminal defendant would need to do to demonstrate the inadequacy of counsel's *Anders* brief would be to review the brief after it was served

16

and then submit a *pro se* brief raising any other issue, however frivolous.

Alternatively, a *per se* rule would require counsel to file two *Anders* briefs—one with her motion, and then a second supplemental one addressing every wholly frivolous argument raised in her client's *pro se* brief—in order to avoid a finding of inadequacy. Under our Local Rules, that would either require counsel to file a motion for leave to file that supplemental brief, *see* L.A.R. 31.3, 111.5(c), or require that this Court order supplemental briefing, *see* L.A.R. 109.2(a), creating needless work for counsel and the Court and unnecessarily complicating this Court's resolution of *Anders* motions. While a supplemental filing may well be warranted if the defendant identifies a non-frivolous issue not originally addressed by counsel, we have never required supplemental briefing by counsel where the issues raised *pro se* are determined to be frivolous, and we reject such a requirement today.

Instead, we clarify that counsel's failure to address issues raised in her client's *pro se* brief does not render an *Anders* brief inadequate *per se*.[5] It may be relevant, however,

---

[5] Other Courts of Appeals are in accord. *See, e.g.*, *United States v. Coxton*, 314 F. App'x 550, 551 (4th Cir. 2008) (noting that defendant filed *pro se* brief that raised an issue not reached by counsel's *Anders* brief, but nevertheless affirming the district court's judgment and allowing counsel to withdraw); *United States v. Burns*, 69 F.3d 540 (7th Cir. 1995) (finding counsel's brief adequate despite client's subsequent *pro se* brief raising a new issue); *United States v. Trevillion*, 770 F. App'x 302, 303 (8th Cir. 2019) (noting that defendant filed *pro*

in illustrating a more general failure to identify and discuss potentially appealable issues, in highlighting counsel's failure to raise non-frivolous issues identified by the defendant, or in otherwise demonstrating that counsel has failed to provide "sufficient indicia that [she] thoroughly searched the record and the law in service of [her] client," *Marvin*, 211 F.3d at 781, and "diligently investigated the possible grounds of appeal." *Anders*, 386 U.S. at 741-42.

Of course, "what constitutes 'sufficient indicia' [of a conscientious examination] cannot be laid down in a formulaic manner," as it will vary with the nature of the proceedings in the district court. *Id*. No doubt there are certain issues that arise with such frequency that counsel's failure to address them ordinarily will be indicative of deficiency, such as the district court's compliance with Fed. R. Crim. P. 11 and the voluntariness of the plea in the context of a guilty plea, or, in the context of sentencing, the court's compliance with Fed. R. Crim. P. 32, the adequacy of the court's reasons for the sentence imposed, and its calculation of the sentence based on

---

*se* brief raising an additional issue not addressed by counsel's *Anders* brief, but granting counsel's motion to withdraw); *United States v. Delacruz-Soto*, 414 F.3d 1158, 1160-61, 1169 (10th Cir. 2005) (observing that after counsel filed *Anders* brief, defendant submitted a *pro se* letter raising an ineffective assistance of counsel argument not addressed by his counsel's *Anders* brief, and finding counsel's submission adequate and granting motion to withdraw).

the Sentencing Guidelines.[6]  But ultimately, our adequacy determination must be made on a case-by-case basis.  So

---

[6] To assist counsel in identifying these and other common issues for appeal, this Court has published an *Anders* Checklist and *Anders* Guidelines for counsel seeking to withdraw from representation, *see* Third Circuit *Anders* Checklist, https://www.ca3.uscourts.gov/sites/ca3/files/ANDERS%20CHECKLIST.pdf (last visited Sept. 13, 2022); Third Circuit *Anders* Guidelines, https://www.ca3.uscourts.gov/sites/ca3/files/ANDERS%20GUIDELINES%203dCir.pdf (last visited Sept. 13, 2022), as have a number of our sister circuits, *see*, *e.g.*, How to File an *Anders* Brief in the United States Court of Appeals for the Second Circuit, https://www.ca2.uscourts.gov/clerk/case_filing/appealing_a_case/pdf/Anders%20brief%20instructions%20and%20checklist%20combined%2010-11.pdf (last visited Sept. 13, 2022) (instructing counsel, *inter alia*, that an *Anders* brief must include a copy of the transcript of the proceedings below, and that in guilty plea cases an *Anders* brief "ordinarily must contain" an examination of the validity of the guilty plea, an examination of the validity and scope of any appellate waiver, and an examination of the government's compliance with the plea agreement); Fifth Circuit *Anders* Guidelines, http://www.ca5.uscourts.gov/clerk/AndersGuidelines.pdf (last visited Sept. 13, 2022) (instructing counsel, *inter alia*, that if she plans to file an *Anders* motion and supporting brief in a jury or bench trial case, at a minimum, her brief must include a discussion of: the sufficiency of the defendant's indictment, any adverse rulings pretrial, during trial, or post trial, jury selection, and jury instructions); Sixth Circuit Notes on *Anders* Cases, https://www.ca6.uscourts.gov/sites/ca6/files/documents

eschewing any *per se* rule, we turn now to the *Anders* brief at issue in this case.

### B. Counsel's *Anders* Brief is Adequate

Here, Langley's counsel has filed a brief that, on its face, fulfills his *Anders* obligations and the requirements of L.A.R. 109.2(a).  Counsel adequately explains why there are no non-frivolous appealable issues regarding the sufficiency of Langley's plea hearing and the propriety and length of Langley's sentence, and given counsel's explanations we do not doubt that he conducted a "conscientious examination" of the record.  *Anders*, 386 U.S. at 744.

As for Langley's change of plea, counsel thoroughly reviewed the District Court's colloquy and confirmed that it addressed each of the factors required by Fed. R. Crim. P. 11(b)(1).  *See supra* Section III.A.  For example, he points out that the District Court addressed Langley directly and made certain that he understood the charge, the factual basis for his plea, and the terms and effect of his plea, including the plea's limited appellate waiver.  *See McCarthy v. United States*, 394 U.S. 459, 464-67 (1969).  Counsel also noted that the Court ensured Langley's plea was made knowingly and voluntarily and that Langley comprehended the penalties he faced.  *See*

/cja/andersnotesrev.wpd__0.pdf (last visited Sept. 13, 2022) (explaining that an *Anders* brief must include a recitation of substantive and procedural facts, and at least one issue of potentially arguable merit); Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit, https://www.ca7.uscourts.gov/rules-procedures/ Handbook.pdf (last visited Sept. 13, 2022).

20

Fed. R. Crim. P. 11; *United States v. Tidwell*, 521 F.3d 236, 251-52 (3d Cir. 2008). And he observed that Langley provided affirmative responses to the Court's inquiries, confirming his understanding of the rights he was waiving. *United States v. Trott*, 779 F.2d 912, 914 (3d Cir. 1985).

Second, Langley's counsel correctly asserts that Langley's sentence is not subject to challenge on appeal. As explained in counsel's brief, Langley may file an appeal for review of his sentence only if any of the conditions in 18 U.S.C. § 3742 applies, which is not the case here. The District Court's sentence was not: (1) imposed in violation of law; (2) imposed as a result of an incorrect application of the Federal Sentencing Guidelines; (3) greater than the sentence specified in the applicable guideline range; or (4) plainly unreasonable. *See* 18 U.S.C. § 3742. In fact, as Langley's counsel details, quite the opposite is true. The sentence Langley received was based on a correct calculation of Langley's Criminal History Category, *see* U.S.S.G. § 4A1.2(e)(1), and a reasonable application of the Federal Sentencing Guidelines. *See* U.S.S.G. § 1B1.1. Indeed, Langley was sentenced to the mandatory minimum of 60-months imprisonment, which was far lower than the guideline range of 110 to 137 months, thanks to his counsel's work in obtaining a substantial downward variance.

In short, the *Anders* brief in this case demonstrates that counsel scoured the record, including both Langley's plea and sentencing hearings, for the best possible arguments for his client. Accordingly, counsel has met his obligations under *Anders*.

21

### C. Our Review Establishes No Non-Frivolous Issues On Appeal

Because we are satisfied that Langley's counsel has submitted an adequate *Anders* brief, we proceed to the second step of our *Anders* inquiry and review the record before us, guided by counsel's brief, in search of any non-frivolous issues. *Youla*, 241 F.3d at 301. Here, our review of the record reveals no issues of arguable merit in this appeal.

Given the record in this case, *see supra* Section I, and the explanations in counsel's *Anders* brief, *see supra* Section II.B, we concur with counsel that there are no non-frivolous appealable issues with respect to Langley's plea hearing or his sentence. But even if we were to consider the issues identified by Langley in his *pro se* brief, which is not required because we find his counsel's *Anders* brief adequate, *see Youla*, 241 F.3d at 301, our conclusion would not change.

The three issues raised by Langley in his *pro se* brief are: (1) that the District Court erred by incorrectly applying the sentencing guidelines "[b]ased on a policy disagreement [o]n the '18:1 v. 1:1 crack to powder cocaine' ratio," *Pro Se* Br. at 3; (2) that at the sentencing hearing his attorney did not bring up that Langley's past convictions were old and that he had completed two re-entry programs; and (3) that the District Court erred in calculating Langley's Criminal History Category by counting Langley's convictions from 1995 and 2001. Each of these arguments lack merit.

As a threshold matter, our precedent would require that we decline to exercise our jurisdiction to review the merits of Langley's arguments about the powder/crack disparity, the re-

entry programs, and the age of his past convictions because he waived them as part of his plea agreement. We will enforce an appellate waiver where we conclude that: (1) the issues a defendant pursues on appeal fall within the scope of the waiver; (2) the defendant knowingly and voluntarily agreed to the waiver; and (3) enforcing the waiver would not work a miscarriage of justice. *See United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008). On this record, each condition is readily satisfied.

Langley's appellate waiver applies to "any appeal . . . challeng[ing] the sentence imposed by the sentencing court if that sentence is 5 years or below." App. at 74. Langley received the mandatory minimum sentence of 5 years, and as Langley's powder/crack disparity argument seeks to challenge the duration of his sentence, it thus falls within the scope of his waiver. Nor is there any question Langley entered his plea knowingly and voluntarily when he confirmed as much during his plea hearing. Lastly, Langley's appeal is not one of the "rare" and "unusual" situations which requires invalidating his waiver to avoid a miscarriage of justice as it does not implicate fundamental rights or constitutional principles. *United States v. Grimes*, 739 F.3d 125, 131 (3d Cir. 2014). Langley's waiver, then, would be enforceable and would preclude consideration of his argument in any event.[7]

---

[7] Even if Langley had not waived this argument, it would still be unavailing. We perceive no error in the District Court's sentencing of Langley. And as noted by the District Court during Langley's sentencing hearing, these arguments could have no effect on Langley's sentence as he received the mandatory minimum of 60 months. *See* 21 U.S.C. § 841(b)(1)(B)(iii). To the extent Langley may be seeking to

23

Our review also satisfies us that Langley's third argument is without merit. We apply an abuse-of-discretion standard to the review of sentencing decisions. *United States v. Tomko*, 562 F.3d 558, 561 (3d Cir. 2009). In considering whether a sentence is reasonable, we must first "ensure that the district court committed no significant procedural error" before examining the "totality of the circumstances" in assessing substantive reasonableness. *Gall v. United States,* 552 U.S. 38, 51 (2007). Sentences are substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

Here, the District Court committed no procedural errors. Though Langley disputes the District Court's counting of his convictions greater than fifteen years old, in calculating his Criminal History Category the Court was right to include them. As it explained to Langley at his sentencing hearing, the last day of incarceration for each of these offenses occurred within the fifteen-year window for counting offenses under the Federal Sentencing Guidelines, so each was properly counted

raise an ineffective assistance claim, it would be premature, see *Massaro v. United States*, 538 U.S. 500, 505-07 (2003), and would be baseless: counsel effectively negotiated a plea deal and, despite Langley's extensive criminal history, was able to persuade the Government and the Court to settle on the lowest sentence available. *See United States v. Hankerson*, 496 F.3d 303, 311-12 (3d Cir. 2007) (finding counsel's representation effective because, *inter alia*, counsel argued for and obtained a downward departure for his client).

24

under U.S.S.G. § 4A1.2(e)(1). Nor can we conclude that Langley's sentence was substantively unreasonable when he stipulated to its reasonableness in his plea agreement and ultimately received the lowest possible sentence permitted by the statute for his offense of conviction. Langley's sentencing arguments are thus also frivolous.

## III.    CONCLUSION

For the foregoing reasons, we will grant counsel's *Anders* motion and dismiss Langley's appeal.[8]

---

[8] In accordance with L.A.R. 109.2(b) we state that the issues presented here lack legal merit, and so Langley's counsel is not required to file a petition for writ of certiorari with the Supreme Court.