**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-3067 & 23-3068
_____

UNITED STATES OF AMERICA

v.

FRANKIE LEON MORRISON,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Nos. 2:19-cr-00098-001 & 2:19-cr-00144-001)
District Judge: Honorable David Stewart Cercone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 12, 2024

Before: BIBAS, FREEMAN, and ROTH, *Circuit Judges*

(Opinion filed: December 5, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

Frankie Leon Morrison was charged with three firearms offenses. After he unsuccessfully sought to suppress physical evidence, he pleaded guilty to the crimes. In his plea agreement, he preserved his right to appeal the denial of his suppression motion but otherwise waived his right to appeal the conviction. Morrison now challenges the Court's suppression ruling and raises other arguments that are barred by his appellate waiver. For the reasons set forth below, we will affirm the judgment of conviction.

**I**

A

In early April 2019, the residents of Buffalo Township, Pennsylvania, experienced several thefts from unlocked cars parked in their driveways. The thefts occurred between 1:00 a.m. and 5:00 a.m., and some were captured on home surveillance video. Buffalo Township Police Officer Jon Gillette viewed the video footage and saw a tall perpetrator wearing dark clothing and a backpack. In one video, a vehicle followed the perpetrator as he went through the cars, so Gillette believed the perpetrator sometimes worked with accomplices.

Early on the morning of April 8, Gillette was working the graveyard shift patrolling the Township's neighborhoods. Around 3:00 a.m., while in the Ridgeview Estates neighborhood, he saw a man standing inside the open door of a car parked in a home's driveway. The man was tall, wore dark clothing and a backpack, and was reaching around the inside of the car. When Gillette called out, the man ran away across

2

the dewy lawn between houses. This caused Gillette to believe the man lacked permission to be in the car.

A few minutes later, Gillette noticed an unoccupied black Chrysler sedan parked partway on the berm. He had never seen a car parked there before, and the car wasn't there when Gillette passed that location two hours earlier. He ran the license plate number and learned that the car was registered in Pittsburgh.

Minutes later, Gillette saw the Chrysler exiting Ridgeview Estates. He activated his lights for a traffic stop, but the Chrysler did not stop. Instead, the driver—later identified as Morrison—yelled out the window to Gillette and asked why he was being stopped. Gillette yelled an order to stop, exited his patrol car, and drew his pistol. Morrison then stopped the Chrysler, and Gillette ordered him out of the car.

Gillette saw that Morrison was dripping with sweat and the bottoms of his pants and his shoes were muddy. This caused Gillette to believe Morrison was the man who ran away from him through the wet grass, so he handcuffed him and placed him in the back of the patrol car.

While awaiting backup, Gillette looked through the open front passenger-side window of the Chrysler. He saw a pair of black gloves on the console and a wet and dirty dark sweatshirt on the backseat. He also saw a backpack on the front passenger seat. The backpack was open, and Gillette saw that it contained a wallet, coins, and gift cards.

Gillette then opened the car door to retrieve the wallet. It contained the driver's license of a Ridgewood Estates resident who lived in the house next to the driveway where a man had been going through the contents of a parked car. Gillette also saw that

the backpack contained a pistol magazine. He then placed Morrison under arrest and read him his *Miranda* rights. Morrison said he was a jitney driver, had just dropped off two passengers, and did not know how the items got into the Chrysler.

Gillette impounded the Chrysler and later executed a warrant to search it. He found two pistols in the trunk. He later discovered that both weapons were stolen from a Ridgeview Estates resident.

B

In May 2019, a federal grand jury returned a three-count indictment charging Morrison with possession of a firearm by a convicted felon, possession of a firearm by a fugitive from justice, and possession of stolen firearms and ammunition. 18 U.S.C. §§ 922(g)(1) & (2); 18 U.S.C. § 922(j). Morrison moved to suppress the evidence found in the Chrysler. After a hearing, the District Court denied the suppression motion. Morrison then entered a conditional guilty plea to all three counts of the indictment. In a written agreement, he waived his right to take a direct appeal from his conviction with one carve-out: he would be permitted to appeal the denial of his suppression motion.

A month after pleading guilty, Morrison moved to withdraw his guilty plea. He argued that his plea was invalid because the indictment was defective. The defect, in his view, was that the felon-in-possession and fugitive-in-possession counts did not allege that he knew he was a felon or a fugitive. *See Rehaif v. United States*, 588 U.S. 225 (2019). The District Court denied the motion. After sentencing, Morrison filed a timely appeal.

4

**II**[1]

We apply a mixed standard of review to an order denying a motion to suppress. Our review of legal determinations is plenary, and we review findings of fact for clear error. *United States v. Dyer*, 54 F.4th 155, 158 (3d Cir. 2022). We view the facts in the light most favorable to the government. *Id.*

Morrison argues that the evidence from the Chrysler should be suppressed because Gillette lacked reasonable suspicion to conduct a traffic stop and lacked probable cause to search the backpack. We disagree.

**A**

An officer may "conduct a brief, investigatory stop when [he] has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006) (applying the *Terry/Wardlow* standard to traffic stops). Reasonable suspicion is less demanding than probable cause but requires "at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123. We assess reasonable suspicion based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981).

The District Court found (and Morrison does not contest) facts that easily support reasonable suspicion. Viewed in the light most favorable to the government, Officer

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

5

Gillette saw a man ("the suspect") who appeared to be stealing items from a car. This occurred around 3:00 a.m. in an area that was experiencing thefts from cars in the early hours of the morning. The suspect's height and clothing matched that of the thief who had previously been caught on home surveillance video. When Gillette called out, the suspect ran away—not into a home but through the lawns between homes. And Gillette knew that an unknown Chrysler had arrived in the neighborhood earlier that morning and parked nearby, in an unusual location.

Gillette attempted to stop the Chrysler as it left the neighborhood minutes after the suspected theft. He activated his patrol car's lights and gave the driver a verbal command to stop. The driver heard the command through his open window but refused to stop. He only complied after Gillette exited his patrol car and drew his weapon. Based on all these facts, Gillette had a reasonable, articulable suspicion that the driver of the Chrysler was connected to a crime. Therefore, the traffic stop was legal.[2]

B

Warrantless searches are presumptively unreasonable under the Fourth Amendment. But there are a few narrow exceptions to this presumption, and one applies here. The automobile exception permitted Gillette to search the backpack without a warrant.

---

[2] Morrison also argues that Gillette conducted a *de facto* arrest without probable cause when he drew his service weapon and ordered Morrison out of the Chrysler. But even assuming this was a *de facto* arrest, Gillette had probable cause to arrest Morrison for attempting to elude a police officer. *See* 75 Pa. Cons. Stat. 3733(a).

6

The automobile exception permits the warrantless search of a vehicle if law enforcement "has probable cause to believe [it] contains evidence of a crime." *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014). To assess probable cause, we ask whether the totality of the circumstances would cause an objectively reasonable police officer to believe the vehicle contains evidence of a crime. *Id.* at 301. If there is probable cause, it "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 300 (citation omitted). The government bears the burden of proving that the automobile exception applies, and it must do so by a preponderance of the evidence. *Id.*

The government met its burden here. When Gillette stopped the Chrysler, he had an objectively reasonable suspicion that its occupant was involved in a theft from a vehicle parked in Ridgeview Estates. *See* Section II.A, *supra*. During the traffic stop, Morrison's sweaty and muddy appearance indicated that he was the suspect who had run through the wet grass. And several items visible in the Chrysler appeared to be related to the crime: dark clothing and a backpack consistent with what the suspect wore minutes earlier, gloves that would conceal fingerprints, and personal property (coins and gift cards) that a reasonable officer would expect to be stolen from a parked car. Cumulatively, these circumstances gave Gillette probable cause to search the Chrysler.

## III

Morrison also argues that the District Court improperly denied his motion to withdraw his guilty plea and his motion to dismiss the indictment. But the government has invoked his appellate waiver, and that waiver bars both arguments.

We will enforce an appellate waiver when (1) the issues raised on appeal fall within the waiver's scope, (2) the waiver was knowing and voluntary, and (3) "enforcing the waiver would not work a miscarriage of justice." *United States v. Langley*, 52 F.4th 564, 575 (3d Cir. 2022) (citation omitted). All three conditions are satisfied here.

First, Morrison's challenge to the indictment falls within the waiver's scope. In his plea agreement, he "waive[d] the right to take a direct appeal from his conviction" with one specific exception: he was permitted to appeal "whether the Court correctly decided the suppression issues." Gov't Supp. App. 285. He agreed that this limited exception to the appellate waiver "do[es] not include the right to raise issues other than those specified." Gov't Supp. App. 286. He now argues that the waiver does not encompass a motion to dismiss the indictment. But he is mistaken. *See United States v. Wilson*, 429 F.3d 455, 457, 457 n.1, 460–61 (3d Cir. 2005) (concluding that defendant's waiver of "the right to appeal any conviction and sentence" bars review of a claim that the indictment should have been dismissed).

Second, Morrison's waiver was knowing and voluntary. During the plea colloquy, he testified that he was alert, clear-headed, and understood the nature of the proceedings. He confirmed that he had read the plea agreement, discussed it with his attorney, and

understood it. And the District Court read the appellate waiver provisions aloud before accepting Morrison's guilty plea.

Morrison nonetheless contends that indictment did not allege that he knew he was a felon or a fugitive, so he did not know the government needed to prove that to convict him on the § 922(g) counts. But the felon-in-possession count of the indictment alleged that Morrison possessed firearms in April 2019 when he had six prior felony convictions (each of which is described in the indictment) and that he "did so knowingly." Morrison Supp. App. at 1–2. Similarly, the fugitive-in-possession count of the indictment alleged that Morrison possessed firearms in April 2019 while a fugitive from justice in a specific Connecticut Superior Court matter, and that he "did so knowingly." *Id.* at 3. "Reasonably read, ["did so knowingly"] could be enough to extend the knowledge requirement to all the material elements of § 922(g)—including felon [and fugitive] status." *United States v. Leonard*, 4 F.4th 1134, 1143 (11th Cir. 2021). And Morrison entered a counseled guilty plea to the § 922(g)(1) offense in February 2022—more than two years after *Rehaif* clarified that knowledge of status is an element of a § 922(g) offense. Given all this, we are persuaded that the waiver was knowing and voluntary.

Third, enforcing Morrison's appellate waiver would not work a miscarriage of justice. Before the date of the firearm-possession charges in the indictment, Morrison had served three multi-year prison terms for his various felony convictions. He acknowledged those convictions during his guilty plea hearing. He also acknowledged his fugitive status. Therefore, his inability to challenge his plea does not "affect[] [his] substantial rights" or "seriously affect[] the fairness, integrity or public reputation of

9

judicial proceedings." *See United States v. Andrews*, 681 F.3d 509, 532 (3d Cir. 2012) (citation omitted).

*       *       *

For the foregoing reasons, we will affirm the judgment.